JOHN BALAZS, Bar # 157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA 95814
Telephone: (916) 447-9299
John@Balazslaw.com

TIMOTHY E. WARRINER, Bar # 166128
Attorney at Law
455 Capitol Mall, Suite 802
Sacramento, CA 95814
Telephone: (916) 443-7141
tew@warrinerlaw.com

Attorneys for Defendant,
BRANT DANIEL

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  vs.<br><br>BRANT DANIEL,<br><br>  Defendant. | Case No. 2:19-CR-0107-KJM<br><br>NOTICE OF MOTION AND DEFENDANT BRANT DANIEL'S *FIRST* MOTION FOR DISCOVERY UNDER *BRADY v. MARYLAND*<br><br>Date: February 8, 2021<br>Time: 9:00 a.m.<br>Courtroom: 3<br>Honorable Kimberly J. Mueller |

TO    McGREGOR SCOTT, U.S. Attorney, and JASON HITT, ROSS PEARSON, and DAVID SPENCER, Assistant U.S. Attorneys:

NOTICE IS HEREBY GIVEN that on February 8, 2021, at 9:00 a.m., or other time set by the Court, before the Honorable Kimberly J. Mueller, Chief District Judge, the defendant, Brant Daniel, through counsel, does and will move for an order for discovery under the Fifth, Sixth, and Eighth Amendments to the

1

U.S. Constitution, Federal Rule of Criminal Procedure 16, *Brady v. Maryland,* 373 U.S. 83 (1963), and its progeny as set forth in the attached Memorandum of Points and Authorities.

     This motion is based on the instant motion, the attached Memorandum of Points and Authorities, and any evidence or argument before or at the hearing on this motion. Daniel requests an evidentiary hearing on any facts disputed by the government.

DATED: January 22, 2021

Respectfully submitted,

/s/ Timothy E. Warriner
TIMOTHY E. WARRINER

/s/ John Balazs
JOHN BALAZS

Attorneys for Defendant
BRANT DANIEL

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Procedural Background.

In count one of the Indictment, the government has charged Brant Daniel and other defendants with conspiring to participate in an Aryan Brotherhood racketeering enterprise from October 2011 to June 2019 in violation of 18 U.S.C. § 1962(d). As part of the conspiracy, the government has also charged Daniel with the first-degree murder of Zachary Scott in Salinas Valley State Prison on October 29, 2016. Docket 25, ¶42. To date, the government has produced two sets of voluminous discovery (including wiretap recordings) and has stated that a third set is forthcoming. A status conference is set for March 3, 2021.

Daniel has been detained throughout pretrial proceedings in this capital case in California State Prison-Sacramento. As detailed more fully in prior pleadings, Daniel has serious medical conditions, which have resulted in multiple surgeries in 2020. The latest surgery was performed in late October to remove blood clots in Daniel's stomach that were discovered, after a spine surgery earlier in the month. Daniel has also had two heart ablation surgeries.

Based on investigation and court documents, the defense believes that several CSP-Sacramento prison guards are involved in serious misconduct and criminal offenses, including aiding and abetting inmates in assaulting and killing other inmates at CSP-Sacramento and covering up their actions. Over the last several months, some of these officers, including officer A.A., have harassed and attempted to provoke Daniel by providing confidential information (including false information) about Daniel's RICO case and file to other inmates and distributing his wife's letters to other inmates. On other occasions, officers have threatened to kill Daniel.

Violence and other abusive misconduct by correctional officers at CSP-Sacramento and other prisons has been ongoing for years.[1]  For example, in September 2016, officers were involved in the homicide of 65-year old inmate Price, who was tripped while his hands were handcuffed behind his back as he was escorted by two guards.  *See* Exhibit A, *U.S. v. Pacheco*, E.D. Cal. No. 2:20-CR-0221-WBS, Indictment filed November 19, 2020); *U.S. v. Aurich*, E.D. Cal. No. 2:20-CR-0219-WBS, Information filed November 18, 2020).[2]

On January 19, 2021, defendant Ashley Marie Aurich pled guilty to one count of submitting a false report in connection with that killing.  In her plea agreement, she summarized the incident as follows:

> AURICH, Correctional Officer 1 [Pacheco], Correctional Officer 2, and Victim 1 [Price] entered Building A7 through the building's rotunda area.  When they were a few feet inside the rotunda, Victim 1 stopped walking and stiffened his torso.  In response, Correctional Officer 1 released his grip on Victim 1's left arm, bent down and wrapped his arms around Victim 1's legs.  While Victim 1 was still handcuffed with his hands behind his back, Correctional Officer 1 lifted Victim 1's legs and pulled them backward in the direction of Correctional Officer 1.  This caused Victim 1 to fall forward violently.  Correctional Officer 1's maneuver caused Victim 1 to strike his head and upper torso on the concrete floor of the Building A7.

---

[1] These rogue officer groups are sometimes called the "Green Wall gang." *See, e.g.*, Exhibit B (Monterey Herald, 11/22/2009, *Whistleblower recounts origins of 'Green Wall' at Salinas Valley State Prison*.); D.J. Vodicka, *The Green Wall: A Prison Guard's Struggle to Expose the Code of Silence in the Largest Prison System in the United States* (2009).

[2] Although the CDCR fired Aurich and Pacheco in 2018, the charging documents refer to other unnamed officers who may have been involved in the offenses.

> The impact of Victim 1's head striking the concrete caused Victim 1 to suffer a broken jaw and broken teeth. The impact also caused bruising on Victim 1's head. After observing the incident, AURICH photographed a pool of Victim 1's blood and Victim 1's broken teeth fragments on the floor of Building A7.
>
> Shortly after the assault, Victim 1 was taken to UC Davis Medical Center to receive treatment for his injuries. On or about September 17, 2016, Victim 1 died in the hospital.

No. 2:20-CR-0219-WBS, docket 16.

More recently, among other incidents, the defense has received information to believe correctional officers were complicit in the killing of inmate Luis Giovanny Aguilar by inmates Anthony Rodriguez and Cody Taylor at CSP-Sacramento on December 12, 2019. Rodriguez, Taylor, and a third inmate, Dion Green, have been charged with Aguilar's murder in Sacramento County Superior Court case no. 20FE00875.[3] A preliminary hearing in the case is set for May 12, 2021. The defense is informed and believes discovery in this case includes video recordings that corroborate information that officers aided the inmates in killing Aguilar. Sometime after the Aguilar homicide, officer A.A. taunted Green in an effort to get him to come out of his cell where he would be assaulted or killed. The defense is informed and believes that officer A.A.'s conduct against Green is consistent with A.A.'s and other officers' conduct with respect to Daniel.

These are not isolated instances. In August 2020, the California Office of Inspector General (OIG) issued a special "Sentinel Case" report in which the OIG concluded that, in November 2018, two officers used unreasonable force on an incarcerated and mentally ill person in a Northern California prison and then covered up their misconduct by providing a false report of the incident that was

---

[3] Taylor has pled guilty to murder and was sentenced to 25-years-to-life imprisonment.

contradicted by a video and medical records.  *See* Exhibit C, Office of the Inspector General, Aug. 19, 2020, Sentinel Case Report, No. 20-04.  The OIG report was critical of the CDCR's handling of the disciplinary charge against the officers, noting that CDCR omitted critical facts and refused to allow the video of the incident to be made public.  And there is other evidence of widespread officer abuse and retaliation against inmates throughout California institutions.  *See* Exhibit D, 9/25/20 Reply Declaration of Jeffrey A. Schwartz, Ph.D., in support of plaintiffs' motion to stop CDCR defendants from assaulting and abusing inmates, *Armstrong v. Newsome,* N.D. Cal. No. 4:94-CV-2307-CW.

In October 2020, correctional officers reported finding a manufactured weapon in Daniel's cell after allegedly obtaining information from a confidential informant that Daniel possessed a weapon that he intended to use to kill correctional officer A.A.  When Daniel returned from surgery to have two blood clots removed, the CDCR punished Daniel by moving him to the Psychiatric Services Unit (PSU),[4] a segregated housing unit for persons who have been diagnosed with severe psychiatric disorders, even though Daniel has never been diagnosed with a psychiatric disorder.  15 Cal. Code of Reg. § 3341.2 (stating that a PSU is a secured housing unit for inmates with "diagnosed psychiatric disorders.").  The three criteria for placement in the PSU include that the inmate be "diagnosed as suffering from a major psychiatric disorder but not disabled to the extent requiring hospitalization."  Exhibit E, CDCR, Operations Manual (CDCR

---

[4]   While he was being moved to the PSU, officers also seized Daniel's legal materials and damaged his TV, radio, and other personal property.  His legal papers were later returned, though some were damaged.

DOM), § 62050.12.1, updated Jan. 1, 2020, at 551.[5]  Given his prior medical history, the noise and stress from being housed with inmates suffering from severe psychiatric disorders places undue strain on Daniel's heart.

Daniel will face a discipline violation hearing on the allegation that he conspired to kill a correctional officer.  Although the defense is informed and believes that the Sacramento County District Attorney's Office has already declined or will decline prosecution, Daniel's discipline hearing has been deferred pending its final decision.  Daniel's placement in the PSU appears to be retaliatory and designed to punish Daniel for the trumped-up disciplinary violation against him.  Indeed, Daniel had successfully completed the CDCR's "step down" program allowing for exit from detention in the SHU.  An adverse discipline finding on the allegation will result in Daniel being placed in a segregated housing unit for an unwarranted 60 months.  And given that all inmates in the PSU have been diagnosed with a major psychiatric disorder *except for Daniel*, the conditions are substantially worse than Daniel's prior segregated housing unit and are tantamount to torture.

Indeed, Daniel continues to be harassed and faces retaliation by officers in the PSU.  Even after Daniel was moved to the PSU away from officer A.A., who

---

[5]   Under the CDCR DOM § 62050.12.1, the three criteria for placement in the PSU are as follows:

 \*   The inmate shall be diagnosed as suffering from a major psychiatric disorder but not disabled to the extent requiring hospitalization.

 \*   The inmate's conduct poses a serious threat to the safety of themselves or others if housed in the general population.

 \*   The inmate is capable of participating in unit or group activity without undue risk to the safety of themselves or others.

he allegedly conspired to kill, the defense believes that officer A.A. inexplicably returned to the PSU on at least two occasions in November until he was directed to leave.

In a discovery letter emailed December 10, 2020, the defense requested the prosecution disclose largely the same information, documents, and evidence that is requested in this motion. The defense has received no response to that discovery request.

Because counsel's informal efforts to get Daniel moved to a more appropriate institution pending his federal capital case have failed and Daniel's life remains in danger at CSP-Sacramento, this motion is being filed now in conjunction with a separate motion to transfer Daniel to another institution to protect him from retaliation by CSP-Sacramento correctional officers and to allow the defense team to have adequate confidential access with Daniel to discuss his case and review discovery.

**II. The Court should order the government to disclose evidence of misconduct and criminal activity by officers at CSP-Sacramento under *Brady,* the Fifth, Sixth and Eighth Amendments, and Federal Rule of Criminal Procedure 16.**

**A. *Brady* Law**

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused . . . violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). The *Brady* rule encompasses impeachment material, as well as exculpatory evidence. *United States v. Bagley,* 473 U.S. 667, 676-77 (1995); *United States v. Henthorn,* 931 F.3d 29 (9th Cir. 1990).

The prosecution's duty to disclose includes any favorable evidence that could be used in "obtaining further evidence." *Giles v. Maryland,* 386 U.S. 66, 74 (1968). Favorable evidence need not be competent evidence or evidence admissible at trial so long as it is material to the preparation of the defense. *Sellers v. Estelle,* 651 F.2d 1074, 1077 n.6 (5th Cir. 1981); *see* DOJ Justice Manual, § 9-5.001(C)(3) (explaining that the government must disclose exculpatory and impeachment "information regardless whether the information subject to disclosure would itself constitute admissible evidence"). Recently, Federal Rule of Criminal Procedure 5(f) was amended to require the Court at a defendant's first court appearance to "issue an oral and written order . . . that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland,* 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law."

Under the *Brady* rule, the Court has held that the prosecution "has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Kyles v. Whitley,* 514 U.S. 419 (1995). "Because prosecutors are in a 'unique position to obtain information known to other agents of the government,' they have an obligation to 'disclose what they do not know but could have learned.'" *United States v. Bruce,* No. 19-10289, at 21 (9th Cir. Jan, 12, 2021). "Prosecutors cannot turn a blind eye to their discovery obligations." *Id.*

**B.    Discovery Request**

Pursuant to *Brady* and Rule 16, the defense requests the following discovery:

1.    Any information, documents, memoranda, or evidence indicating that officer A.A. or any other correctional officer may have threatened Daniel, passed

on confidential information or documents (including his wife's letters) about Mr. Daniel or his case, or otherwise may have sought or conspired to have Daniel threatened, assaulted, or killed;

      2.    Any information, documents, memoranda, or evidence that officer A.A. has worked or been in the Psychiatric Services Unit (PSU) *after* Daniel was transferred to that unit for allegedly conspiring to kill officer A.A.  The defense believes that officer A.A. has worked or been present on at least two occasions in the PSU after Daniel was transferred there for conspiring to kill A.A.;

      3.    Any information, documents, memoranda, or evidence that officers may have been complicit in the December 12, 2019 killing of inmate Luis Giovanny Aguilar at CSP-Sacramento by inmates Anthony Rodriguez and Cody Taylor.  Rodriguez, Taylor, and Dion Green have been charged with this murder in Sacramento County case no. 20FE00875.  This includes a request for the discovery provided to counsel for the defendants in this case, as well as any information tending to show that correctional officers were complicit in the killing, including any videotape evidence and all statements of the defendants or witnesses to investigating agents;

      4.    Any information, documents, memoranda, or evidence, including discovery and witness statements, related to the killing and acts of misconduct by CSP-Sacramento correctional officers alleged in *United States v. Pacheco,* No. 2:20-CR-0221-WBS, and *United States v. Aurich,* No. 2:20-CR-0219-WBS;

      5.    Any information, documents, memoranda, or evidence that correctional officers solicited any CSP-Sacramento inmate to threaten, assault, or kill either Daniel, inmate Green, or any other person and any information, documents, memoranda, or evidence indicating that any officer attempted to cover up any such offenses;

6.	Any information, documents, memoranda or evidence that any correctional officer provided or allowed CSP-Sacramento inmates to possess weapons on their person or in their cell and any information, documents, memoranda, or evidence indicating that any officer attempted to cover up such conduct;

7.	Any information, documents, memoranda, emails, or evidence about the Warden and CDCR staff's decision to place Daniel in the PSU and to continue to house him there; and;

8.	Any information, documents, memoranda, or evidence of a correctional officer "Green Wall" prison guard gang at CSP-Sacramento, Salinas Valley State Prison where Daniel was previously imprisoned, or any other California correctional institutions.

C.	**The Requested Information and Materials are Discoverable.**

The requested information should be disclosed to the defense because it is exculpatory with respect to sentencing (and potentially guilt) under *Brady* and is "material to preparation of the defense" under Federal Rule of Criminal Procedure 16(a)(1)(E)(i).[6]  Evidence that CSP-Sacramento officers have repeatedly taken actions to assault or kill inmates shows that Daniel may have been framed in the prison disciplinary violation charge or that the weapon reportedly found in his cell was possessed in self-defense in response to provocation by correctional officer

---

[6]	Federal Rule of Criminal Procedure 16(a)(1)(E)(i) provides:

> (E)  *Documents and Objects.*  Upon a defendant's request, the government must permit the defendant to inspect and copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; . . . .

11

A.A. and other officers. Indeed, in his approximately 26 years in CDCR custody, Daniel has never been accused of assaulting or participating in violence against an officer.

Given that this is a potential capital case against Daniel, the defense is entitled to present through the Department of Justice's death penalty review process or at a potential penalty phase "any factors in the defendant's background, record or character or any other circumstance of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8)); *McClesky v. Kemp,* 481 U.S. 279, 306 (1987) (explaining that the jury must be allowed to consider "any relevant circumstance that could cause it to decline to impose the [death] penalty"). Under the Department of Justice's Manual, "[e]xculpatory information, regardless of whether information is memorialized, must be disclosed to the defendant reasonably promptly after discovery." U.S. DOJ Manual, 9-5.002, Step 3, B. The Court thus should order the government to provide the requested discovery under *Brady* and the other authorities cited in this motion.

### III.  Conclusion

For these reasons, the Court should grant defendant Brant Daniel's motion for discovery as set forth above.

DATED: January 22, 2021

Respectfully submitted,

/s/ Timothy E. Warriner
TIMOTHY E. WARRINER

/s/ John Balazs
JOHN BALAZS

Attorneys for Defendant
BRANT DANIEL