UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:19-cr-00107-KJM |
| Plaintiff, | ORDER |
| v. | |
| Ronald Yandell, et al., | |
| Defendants. | |

Defendant Brant Daniel is detained until his trial at California State Prison Sacramento. He argues the prison has prevented him from consulting confidentially with his appointed counsel, and he alleges prison officers have harassed him and attempted to intimidate him. He moves for an order requiring his transfer out of the custody of the California Department of Corrections and Rehabilitation. *See* Am. Mot. Transfer, ECF No. 781. As explained below, his motion is **denied**. He has shown neither that a transfer would be the appropriate remedy if the conditions of his confinement were unconstitutional nor that the state has arbitrarily and unreasonably prevented him from consulting confidentially with his attorneys.

I.   **BACKGROUND**

Daniel is one of several defendants who may face capital charges for joining an alleged racketeering enterprise within the Aryan Brotherhood operating within the California prison system. *See generally* Indictment, ECF No. 25. According to an affidavit supporting the criminal

1

complaint, Daniel murdered another inmate with an improvised weapon as part of that enterprise. *See* Compl. at 124–27, ECF No. 1. He is detained pending trial in this federal matter at California State Prison Sacramento under a writ of *habeas corpus ad prosequendum* and an agreement with the U.S. Marshals Service. *See* Limited Use Agreement, ECF No. 555-1.

As relevant here, Daniel originally was housed in the administrative segregation unit. Largent Decl. ¶ 3, ECF No. 709-1. But about a year ago, confidential sources told investigators Daniel was keeping a weapon in his mattress and planned to assault or murder a correctional officer in the unit where he was housed. *See* Rules Violation Report at 1, ECF No. 709-2; Largent Decl. ¶ 4. Officers searched Daniel's cell and found a makeshift knife. *See* Largent Decl. ¶ 4. The prison moved Daniel to the psychiatric services unit (PSU) to separate him from the officer identified as his target. *See id.* ¶ 5. The PSU is normally reserved for "inmates suffering from mental disorders," but the prison also assigns inmates to the PSU "if they pose a threat that cannot be alleviated by placement in the administrative segregation unit." *Id.* Officers believed Daniel posed such a threat. *See id.*

After Daniel moved to the PSU, he filed a motion requesting a transfer "to a federal detention center or other appropriate facility." Mot. Transfer at 1–2, ECF No. 703. He argued his assignment to the PSU was in retaliation for his alleged plan, which he denies existed, to murder an officer. *See id.* at 9. Other inmates in the psychiatric services unit yelled, screamed, and kicked cell doors at all hours. Daniel Decl. ¶ 7 (Mar. 10, 2021), ECF No. 728. They threw feces and started fires. *Id.* Daniel claimed the noise and smell prevented him from sleeping and thus from focusing on his case and meetings with attorneys, which only added to other restrictions the prison had placed on confidential attorney visits. *See, e.g.*, Mot. Transfer at 7–8. Daniel's appointed counsel also claimed to have received information from a whistleblower within the prison. *See generally* Balazs and Warriner Decl., ECF No. 764 (under seal).[1] This confidential

---

[1] The government has consistently expressed concerns about defense counsel's submission of this and other declarations given the conflicts that may arise when an attorney takes on a dual role as a witness and advocate. *See, e.g.*, Opp'n re Materiality at 5 n.5, ECF No. 765 (citing *Lau Ah Yew v. Dulles*, 257 F.2d 744, 746–47 (9th Cir. 1958)); Opp'n to Am. Mot. Transfer at 11 n.7, ECF No. 798 (same). The government does not object to the court's consideration of the attorneys' declarations, however, and as discussed in this order, their factual claims do not

source, they said, had provided information raising questions about Daniel's reassignment and the allegations against him. *See id.* ¶¶ 6–7. Daniel's attorneys originally withheld the identity of their source, but have identified him now as a very recently deceased correctional officer. *See* Suppl. at 3–4, ECF No. 866. The attorneys suggest connections between the officer's suicide and his whistleblower allegations. *See id.* In his motion filed before the officer's suicide, Daniel contended similarly that a group of rogue officers has threatened and assaulted inmates, attempted to incite violence, spread rumors, planted weapons, and has even been "involved" in two inmate homicides. *See, e.g.*, Am. Mot. Transfer at 4, ECF No. 781.

Daniel was transferred out of the PSU while his motion was pending, and he withdrew it, *see* Stip. & Proposed Order, ECF No. 768, but he has now renewed his request for a transfer in an "amended motion," Am. Mot. Transfer, ECF No. 781. As before, he requests an order requiring his transfer "outside the custody of the California Department of Corrections and Rehabilitation (CDCR) during the pendency of his federal criminal case." *Id.* at 2.

The amended motion first describes problems Daniel has had communicating confidentially with his attorneys by phone, in person, and by mail, as follows:

- Phone Calls: Although the prison has made special arrangements for Daniel to speak with his attorneys weekly by phone in a private staff member's office, *see* Kraemer Decl. ¶ 4, ECF No. 215-2; Resp., ECF No. 418, Daniel claims his calls are not confidential because a person sitting in an adjacent office might hear what he is saying, *see* Daniel Decl. ¶ 7 (July 2, 2021), ECF No. 828.
- In-Person Meetings: Although Daniel can meet with his attorneys in person at least once a week, Largent Decl. ¶ 6, and although he can review discovery with his attorneys on a laptop during these meetings, *id.*, he claims he cannot effectively consult with his attorneys, *see* Suppl. 2–3. In-person meetings are available only on Wednesdays and Thursdays. *See* Balazs Decl. ¶ 2 (Sept. 7, 2021), ECF No. 866. The defense team has elected not to visit Daniel on Wednesdays out of

---

show Daniel is entitled to the relief he seeks. The court therefore does not consider whether the attorneys' declarations improperly blend the roles of advocate and witness.

3

       concerns about being overheard, *see id.* ¶ 3; Swenson Decl. ¶ 2, ECF No. 866, and Thursday consultations are sometimes difficult to schedule, Balazs Decl. ¶ 4 (Sept. 7, 2021). Access to the private consultation rooms available on Thursdays is shared with at least one inmate who must be separated from Daniel "at all times." *Id.*

- Mail: Although the prison's policy is to inspect legal mail in front of the inmate recipient using a method designed to avoid the accidental disclosure of confidential information, *see* Reply at 4, ECF No. 807; Opp'n at 8 (citing Cal. Dep't Corr. & Rehab., Operations Manual § 5401.12.3), Daniel claims the prison has opened his legal mail before it was delivered to him, describing four occasions when this has occurred, Daniel Decl. ¶ 2 (June 14, 2021), ECF No. 807-1; Daniel Decl. ¶¶ 2–6 (July 6, 2021), ECF No. 828. The prison attributes the opened mail to human error and inadvertence. *See* Daniel Decl. Exs. A–D (July 6, 2021).

Daniel also claims correctional officers have recently attempted to intimidate him. He describes three events. First, he claims an officer came to his cell in March 2021 and told him "to just plead guilty to [his] RICO case and all this crap will stop." Daniel Decl. ¶ 3 (June 14, 2021). Video from a security camera in the prison shows an officer speaking to Daniel through his closed cell door for a few minutes on the evening in question. *See* Security Camera Video, "Fab1 Dayroom A 1053 (Mar. 21, 2021, 7:44 p.m. to 8:16 p.m.).[2] There is no sound, and nothing in the video reveals what the officer said.

Second, Daniel describes an officer's appearance outside the consultation room during an April 2021 meeting with one of his attorneys. Daniel Decl. ¶ 4 (June 14, 2021); Balazs Decl. ¶ 2 (May 17, 2021), ECF No. 781. During the meeting, an officer paused at the interview booth, lowered his mask, pressed his face against the window, smirked, and "waived his finger." Daniel Decl. ¶ 3 (June 14, 2021); Balazs Decl. ¶ 2 (May 17, 2021). After the attorney left, Daniel claims, the same officer came back into the booth and threatened him: if Daniel did not win his

---

[2] The videos were previously produced as AB_00034912 to AB_0034914 and were lodged with the court on July 12, 2021. *See* Notice of Lodging, ECF No. 839.

motion for a transfer, "I hear things are going to get a lot worse for you."  Daniel Decl. ¶ 3 (June 14, 2021).  Daniel and his attorney believe this officer was an associate warden.  *See id.*; Balazs Decl. ¶¶ 2–3 (May 17, 2021).  Video recorded by a camera in the corner of the room opposite the interview booth shows a person pausing at the window of an interview room, lowering a mask, and vaguely gesturing with one hand, then returning a few minutes later.  *See* Security Camera Video, "A Visiting 1156" (Apr. 9, 2021, 1:12 p.m. to 1:42 p.m.).[3]  The video has no sound, and it is not possible to know what anyone might have said.

Third, in May 2021, Daniel claims an officer came to his cell, kicked his door, and threatened that "someone will die and it won't be a Green Wall member," pointing to Daniel.  Daniel Decl. ¶ 5 (June 11, 2021).  "Green Wall" is a phrase used by witnesses who testified many years ago to California lawmakers about a code of silence among some correctional officers in at least one California prison; correctional officers wear olive-green uniforms.  *See, e.g.*, Mark Arax, "Guard Challenges Code of Silence," *L.A. Times* (Jan. 20, 2004).  According to Daniel's declaration, the officer who threatened him in May would not leave the area outside his cell until another officer told him to go.  Daniel Decl. ¶ 5 (June 11, 2021).  No video is available.

As noted, the government opposes Daniel's motion.  *See* Opp'n Am. Mot. Transfer, ECF No. 798.  The court heard arguments on June 21 and July 14, 2021, and after the parties filed short supplemental briefs related to the videos cited above, the court submitted the matter for decision.  *See* Gov't Notice of Lodging, ECF No. 839; Def.'s Statement, ECF No. 844.  Daniel also filed a brief supplement, which the court has considered; doing so has not unfairly prejudiced the government.  *See* Def.'s Suppl., ECF No. 866.

**II.   DISCUSSION**

Daniel's motion raises several questions this court has already considered extensively. *See generally* Prev. Order (July 8, 2020), ECF No. 510.  In particular, as the court previously summarized, federal pretrial detainees may contest restrictions that infringe on their right to counsel, and if they show those restrictions violate constitutional standards, they may be entitled

---

[3] *See supra* note 2.

to relief in the criminal case. *See id.* at 7–8. For example, when this court last considered the conditions of the defendants' pretrial confinement, it imposed four requirements:

    1.    In-person visits with attorneys must be conducted in a way that the content of conversations is not audible outside the visitation booth.

    2.    Defendants' calls to attorneys must not be recorded.

    3.    Defendants must be allowed to make phone calls to their attorneys in a way that prevents third parties from overhearing them.

    4.    Legal mail may be opened and inspected in front of the defendants, but must not be read for content . . . . If legal papers must be inspected for contraband, the inspection must happen in the presence of the defendant to allow verification that the papers are not being read for content.

*Id.* at 15–16.

Daniel does not request reconsideration of the court's previous order. Nor does he cite authority in support of his argument that a transfer, as opposed to an order like the one summarized above, is an appropriate remedy. The court is aware of no such authority. Daniel's request for a transfer to federal custody is thus denied.

In the interest of ensuring Daniel has not been deprived of a constitutional right, the court continues to consider his argument that the prison has deprived him the right to confidential pretrial consultation with his attorneys. The legal standard governing that question is the same now as it was when the court previously considered it. *See id.* at 7–8. A few principles are worth reiterating.

Federal pretrial detainees may ordinarily challenge the conditions of their confinement only in a separate civil action. *See United States v. Luong*, No. 99-433, 2009 WL 2852111, at *1–2 (E.D. Cal. Sept. 2, 2009); *United States v. Hollis*, No. 08-276, 2009 WL 902062, at *1 (E.D. Cal. April 1, 2009). Federal courts have made one exception to this rule for challenges to conditions that prevent a defendant from consulting with counsel or exercising other trial rights. *See United States v. Loera*, No. 13-1876, 2017 WL 3098257, at *27–28 (D.N.M. June 22, 2017); *see also United States v. Wade*, No. 07-00111, 2009 WL 3837151, at *1 (D. Alaska Nov. 13,

2009). Any broader exception would allow defendants to bypass the administrative exhaustion requirements of the Prison Litigation Reform Act. *See Luong*, 2009 WL 2852111, at *2 (citing *Ontiveros v. Los Angeles County*, 611 F. Supp. 2d 1090, 1094 (C.D. Cal. 2009)); *accord, e.g.*, *Loera*, 2017 WL 3098257, at *27–28. A broader exception also would have practical consequences when, as in this case, the moving defendant is detained in a state prison or county jail and the state officials and officers are not parties to the federal case. *See Luong*, 2009 WL 285111, at *2; *Hollis*, 2009 WL 902062, at *1. The first step of the analysis is thus to separate the conditions Daniel may challenge in this action because they prevent him from consulting with his attorneys, from conditions he may challenge only in a separate civil action.

      Daniel's arguments about restrictions on his phone calls with attorneys, limits on his in-person meetings with attorneys, and intrusions into his legal mail relate directly to his right to consult with his attorneys before the trial. The government does not argue otherwise. *See* Opp'n Am. Mot. at 7–9. By contrast, Daniel's claims of intimidation attempts and conspiracies among correctional officers strike at a different target: harsh treatment more generally. He does not contend and has not shown that intimidation or threats have prevented him from consulting meaningfully with his attorneys or from freely entering the plea or pursuing his case as he chooses. His attorneys have represented his interests capably and diligently, and he has consulted with them consistently for many months. *See* Albain Decl. ¶ 3, ECF No. 798-2 (documenting 21 phone calls and in-person meetings in March, April, May, and June 2021). The court therefore considers only Daniel's claims about restrictions on his phone calls, in-person meetings, and mail.

      For these claims, the court must determine (1) whether the prison's restrictions amount to "punishment" or are, instead, merely "an incident of some other legitimate governmental purpose," *Bell v. Wolfish*, 441 U.S. 520, 538 (1979), and (2) whether those restrictions are "reasonably related to legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89 (1987). These inquiries may well overlap. *See Bull v. City and County of San Francisco*, 595 F.3d 964, 971–77 (2010) (en banc). In both inquiries, several of the same considerations arise. There must be a "valid, rational connection" between regulations and the legitimate government interest. *Turner*, 482 U.S. at 89 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). Conversely, an

7

"arbitrary or purposeless" restriction violates the Constitution. *Bell*, 441 U.S. at 539. A regulation or condition is more likely to be upheld if detainees can vindicate their rights by alternative means and if the prison has no ready alternatives. *See Turner*, 482 U.S. at 90–91. The effects of a proposed accommodation on guards and other inmates or detainees may also help show whether a regulation is constitutional. *Id.* at 90. Finally, in both *Bell* and *Turner*, the Supreme Court underscored the importance of safety and security in a prison, the difficulty of prison administration, and the deference due to prison administrators. *See Turner*, 482 U.S. at 84–85; *Bell*, 441 U.S. at 546–47.

Daniel has not shown his calls, meetings, or mail have been restricted arbitrarily or for reasons unrelated to legitimate governmental interests.

First, he has not shown that restrictions on his phone calls with counsel are unconstitutional. The prison does not normally permit confidential phone calls with attorneys for those serving state sentences, so it has made special arrangements for Daniel to speak to his attorneys on an unmonitored phone line in an office that belongs to a staff member once a week for 45 minutes. *See* Kraemer Decl. ¶ 4; Albain Decl. ¶ 3. When Daniel is using the office, prison staff cannot. *See* Kraemer Decl. ¶ 4. The prison therefore has legitimate interests in limiting Daniel's time on the phone in staff offices. Nor does the record suggest a less restrictive or more confidential alternative venue is readily available. The court will not intervene in the day-to-day scheduling of staff offices and other spaces for inmate phone calls without evidence of a more pressing need.

Nor has Daniel shown that restrictions on his in-person meetings with his attorneys have been unconstitutionally limited or curtailed. California has legitimate interests in keeping staff members, officers, inmates, visitors, and prisons secure against the introduction of contraband and violence. *See, e.g.*, *Turner*, 482 U.S. at 84–85; *Bell*, 441 U.S. at 546–47; *Bull*, 595 F.3d at 966. These interests are not merely abstract in Daniel's case. He admitted to stabbing another inmate to death in 2016, *see* Compl. at 124–27, and investigators found a makeshift knife in his mattress just last year, Largent Decl. ¶ 4. He has not shown why the court should second guess prison administrators' decisions about when, where, and how often he may safely and securely

meet with his attorneys in person.  He has cited no authority supporting his claim that he is constitutionally entitled to more frequent in-person meetings than weekly, especially when he may also make weekly calls to his attorneys on an unmonitored and unrecorded phone line.

Nor has Daniel shown the state unconstitutionally infringed on his rights to confidential consultation with counsel by opening his legal mail four times.  As summarized above, the prison's policy forbids staff from reading legal mail, and no evidence contradicts the prison's claim that it opened Daniel's mail by accident.  No evidence shows officers read his mail or confidences were revealed.

### III.  CONCLUSION

Daniel has not shown that the conditions of his confinement unreasonably or arbitrarily prevent him from consulting with his attorneys confidentially such that the court has the authority to order changes in those conditions.  His amended motion to transfer is **denied**, but the restrictions imposed in this court's order at ECF No. 510 remain in effect.

This order resolves ECF No. 781.

IT IS SO ORDERED.

DATED: October 12, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE