JOHN BALAZS, Bar # 157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA 95814
Telephone: (916) 447-9299
john@balazslaw.com

TIMOTHY E. WARRINER, Bar # 166128
Attorney at Law
455 Capitol Mall, Suite 802
Sacramento, CA 95814
Telephone: (916) 443-7141
tew@warrinerlaw.com

Attorneys for Defendant
BRANT DANIEL

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:19-CR-0107-KJM |
| Plaintiff, | **MOTION FOR RECONSIDERATION** |
| vs. | |
| BRANT DANIEL, | |
| Defendant. | |

## I. Introduction

Pursuant to local rule 430.1(i), defendant Brant Daniel, through counsel, moves for reconsideration of the Court's October 13, 2021 order (docket 894), which denied his *amended* motion for transfer out of CDCR custody during the pendency of his federal case. Reconsideration should be granted because the Court's order overlooks or misapprehends significant points of fact and law in denying Daniel's motion without an evidentiary hearing.

1

In short, Daniel has presented substantial evidence that his legal mail has been opened and read in violation of the Court's prior order and constitutional mandates.  His legal visits have been severely restricted to an extent that it interferes with the defense team's ability to represent their client in this capital case.  And he has been threatened and repeatedly harassed by CSP-Sacramento officers based on a trumped up disciplinary charge and in retaliation for litigation that has exposed corruption among rogue officers there.  In these circumstances, the Court should order the government to transfer Daniel out of CDCR custody and/or take other appropriate remedial steps to protect his access to counsel and ability to defend this capital case.

## II.    Procedural History

Unlike the remaining capital defendants in this case, Daniel has been detained throughout pretrial proceedings for more than two years in California State Prison-Sacramento pursuant to a contract with the U.S. Marshal's Service.

On January 22, 2021, Daniel filed a motion to have the government transfer him out of CDCR custody into an appropriate pretrial detention facility or federal prison.  Docket 703.  In his motion, Daniel explained that prison authorities abruptly moved him to the Psychiatric Services Unit (PSU) in October 2020, even though he did not meet the criteria for placement in the unit, i.e., he had not been diagnosed as suffering from a major psychiatric disorder.  Docket 781; 15 Cal. Code Reg. § 3341.2.  In the PSU, inmates throw feces, bang on their cells at all hours, and routinely start fires.  Daniel contended that he was transferred to the PSU in retaliation for a false disciplinary charge that he conspired to kill a correctional officer after an inmate-manufactured weapon was reportedly found in his cell.  Docket 703, at 4.  He argued that his continued incarceration in the PSU was tantamount to torture without any penological rationale in violation of

California regulations and constitutional requirements, including the Sixth Amendment right to consult with counsel and prepare a defense.  Docket 703, 725.

In a simultaneously-filed motion for discovery, Daniel presented evidence supporting allegations that a group of rogue officers at CSP-Sacramento have been involved in serious misconduct, including threatening and assaulting inmates, passing on confidential information from inmate files, spreading false rumors about Daniel and other inmates to get them targeted for violence, and planting weapons and drugs in inmates' cells.  Dockets 702, 724, 754.  The defense also presented evidence that on at least two occasions, CSP-Sacramento officers have been involved in killing inmates.  The discovery was requested for use in a mitigation presentation to refute the allegations set forth in the disciplinary allegation as to why the government should not seek the death penalty against Daniel.[1]

On April 28, 2021, after the Court had ordered an evidentiary hearing on Daniel's allegations in his motion to transfer, the prison transferred Daniel out of the PSU.  Docket 781, at 4.  Because the transfer substantially changed the basis for Daniel's motion, the parties stipulated to vacating the remaining schedule with the understanding that Daniel intended to file an amended motion to address the new circumstances.  Docket 768, 770.

On May 17, 2021, Daniel filed an amended motion to transfer him out of CDCR custody to protect his constitutional rights and to preserve the integrity of these federal criminal proceedings.  Docket 781.  In his motion and subsequent court filings, Daniel argued and presented evidence that his right of access to

---

[1]      On July 6, 2021, the Court ordered, in part, the discovery Daniel requested.  Docket 824.  At the October 13, 2021 status conference, the Court ordered the government to provide the previously-ordered discovery by November 12, 2021.  Docket 892.

counsel and other constitutional rights were being violated based on three series of allegations.

First, Daniel contended that he is subject to ongoing harassment and retaliation by CDCR officers in response to a false prison disciplinary charge that he conspired to kill a correctional officer and his counsel's pleadings exposing serious officer misconduct at the prison, which were widely reported in the Sacramento Bee and other media. In addition to placing Daniel in the PSU for six months and other retaliation set forth in his initial motion to transfer, Daniel presented evidence of the following retaliatory acts: (1) an officer went to Daniel's cell and told him to plead guilty and all of it would stop (docket 807-1, at ¶3); (2) shortly after Daniel's counsel left after a legal visit, another officer told Daniel in substance that if he doesn't win his motions, things would get a lot worse for him (docket 807-1. ¶4); and (3) a third officer kicked Daniel's cell door and threatened him (docket 807-1, ¶5). At the June 21 hearing on Daniel's motion, the Court stated that he raised serious allegations that could not be swept under the rug and ordered the government to produce video recordings of the first two incidents. Docket 812. The video recordings (without audio) corroborated the first two incidents; the third was in a unit without cameras. Dockets 839; 844.

Second, Daniel claimed that CDCR staff—likely those that had been disciplined by being transferred to the mail room due to their misconduct—had opened Daniel's confidential legal mail at least four times. Declaration of John Balazs (docket 781, ¶¶ 4-5); Declaration of Brant Daniel (docket 807-1, at ¶2); Declaration of Brant Daniel (docket 828, at ¶¶ 2-6, Exhibits A-D). CSP-Sacramento staff started opening Daniel's legal mail *only* after Daniel filed his initial motions for discovery and transfer alleging serious staff misconduct and acts of violence. Docket 807-1, ¶2. As a result, Daniel's counsel represented that they

have avoided sending their client confidential legal materials and are careful not to discuss certain sensitive topics in attorney-client calls.  Docket 781, at 10, ¶ 6.

Third, since August 2021, legal visits in the prison's private interview booths have been cut back to only one day a week (Thursdays) from 8 a.m. to 1:30 p.m. and Daniel's defense team has not been allowed to schedule a legal visit for times when his pro se codefendant Michael Torres has his weekly legal visits with his paralegal.  Docket 866.  Daniel argued that this limited schedule effectively prevents his defense team from adequately consulting with him in preparing a defense and mitigation presentation.  Just this week, the defense's mitigation specialist was denied her request to schedule confidential visits with Daniel for two consecutive weeks because, according to prison staff, of the lack of available legal visiting rooms.  *See* Declaration of Ronda Swenson (attached).

In its October 13, 2021 order, the Court denied Daniel's amended motion to transfer on the ground that he "has not shown that his conditions of his confinement unreasonably or arbitrarily prevent him from consulting with his attorneys confidentially such that the court has the authority to order changes in those conditions."  Docket 894, at 9.  First, the Court held that Daniel's claims of intimidation and retaliation strike at harsh treatment generally, rather than showing the prison staff's threats and other intimidation have prevented him from meaningfully consulting with his attorneys.  *Id.* at 7.  Second, the Court ruled that "the prison's policy forbids staff from reading legal mail, and no evidence contradicts the prison's claim that it opened Daniel's legal mail by accident."  *Id.* at 9.  Finally, the Court ruled that Daniel has not shown that his in-person meetings and legal calls have been unconstitutionally curtailed.  *Id.* at 8.

**III.**  **On reconsideration, the Court should order that Daniel be transferred out of CDCR custody and/or take other appropriate steps to remedy the infringement on his right to access counsel and exercise of his rights to defend his capital case.**

This is a capital case. "Due to the extraordinary and irrevocable nature of the penalty, at every stage of the proceedings counsel must make 'extraordinary efforts on behalf of the accused.'" ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, at 3 (rev. ed. Feb. 2003). "Perhaps the most critical period of the proceedings" in a capital case is the period before trial "when consultation, through on-going investigation and preparation were vitally important." *Powell v. Alabama,* 287 U.S. 45, 57 (1932). "One of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense." *Wolfish v. Levi,* 573 F.2d 118, 133 (2d Cir. 1978), *rev'd on other grounds, Bell v. Wolfish,* 441 U.S. 520 (1979). "A criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense" and "nearly sacrosanct." *Nordstrom v. Ryan,* 762 F.3d 903, 910 (9th Cir. 2014). Given this backdrop, this Court has noted that district courts have authority in a criminal case to consider "an inmate's challenges to conditions of confinement *that impinge his or her ability to consult with counsel or exercise other trial rights*." Docket 510, at 7 (emphasis added).

**A.**  **Retaliation**

Daniel's motion claims CSP-Sacramento staff have retaliated against him after allegations were made that he conspired to kill a correctional officer and he exposed officer misconduct and violence against inmates. The Court's order asserts that his claim attacks "harsh treatment more generally" instead of showing that the intimidation and threats have interfered with consulting with his attorneys or being able to defend his case as he chooses. Docket 894, at 7. This is not so.

Daniel has made specific allegations backed by video evidence that officers have threatened him over motions his defense team have filed in an attempt to stop him from pursuing such litigation in defense of his capital case. Docket 807-1, ¶¶ 2-5. Such actions are designed to intimidate Daniel and his attorneys from vigorously defending his case, impairing the integrity of these capital case proceedings. Daniel's counsel cannot fully defend his case where simply pursuing certain motions or defenses may subject their client to further retaliation, punishment, or violence by rogue officers.

In analogous circumstances, courts have held that the due process clause protects a defendant against vindictive prosecution or punishment in response to a defendant's exercise of a legal right. As the Supreme Court explained, "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . ." *North Carolina v. Pearce,* 395 U.S. 711, 725-26 (1969) (vindictive sentencing after appeal); *see also United States v. Jenkins,* 504 F.3d 694, 700 (9th Cir. 2007) ("the 'prophylactic' doctrine is designed, in part, 'to prevent chilling the exercise of [legal] rights by other defendants who must make their choices under similar circumstances in the future"). The Supreme Court has also "held that a defendant's right to the effective assistance of counsel is impaired when he cannot cooperate in an active manner with his lawyer." *Riggins v Nevada,* 504 U.S. 127, 144 (1992) ("Kennedy, J., concurring).

These same principles apply here. Daniel had been retaliated against for exercising his legal right to file motions in defense of his case. The Court has the power to take appropriate steps to protect his ability to access counsel and the courts and use the legal process to defend his case. The Court thus should order the government and U.S. Marshal to transfer Daniel outside CDCR custody to a

suitable pretrial detention facility or make other appropriate orders to safeguard these constitutional rights.  *See, e.g., United States v. Luong,* No. 2:99-CR-0433-WBS (E.D. Cal. Sept. 2, 2009) (noting that a defendant may challenge conditions of confinement in a criminal proceeding where such conditions "affect his ability to consult with counsel or exercise other trial rights") (citing *Falcon v. US. Bureau of Prisons,* 52 F.3d 137, 139 (7th Cir. 1995)).

### B.    Opening Legal Mail

In its order denying relief, the Court noted that it had previously ruled that "[l]egal mail may be opened and inspected in front of the defendant, but must not be read for content . . . .  If legal papers must be inspected for contraband, the inspection must happen in the presence of the defendant to allow verification that the papers are not being read for content."  Docket 894, at 6.  In his declaration, Daniel presented evidence that CSP-Sacramento staff have opened his legal mail before it was delivered to him at least four times in a three-month period in violation of the prison's own policy and the court's order.  Docket 828 with exhibits A-D.  In response to Daniel's administrative grievances, prison staff have admitted doing so three times, claiming each time it was an accident.  *Id.*

The Court denied Daniel's claim on the ground that "no evidence contradicts the prison's claim that it opened Daniel's mail by accident."  Docket 894, at 9.  The most reasonable (if not the only) inference to reach from the evidence, however, is that Daniel's legal mail was intentionally opened and read by staff in violation of the Court's order.  Daniel's mail had not been handled inappropriately until the Sacramento Bee reported on defense motions that raised allegations of serious misconduct by CSP-Sacramento officers.  Docket 828, at 1-2.  Some of these officers have been transferred to the mail room for disciplinary reasons and would have strong reasons to want to read legal mail discussing their misconduct.

Staff improperly opening his legal mail once might be an accident.  Not four times.

The government presented no evidence to counter Daniel's declaration and

supporting exhibits.  Rather, it relied on the prison's general policy against opening

up legal mail that Daniel has shown has been repeatedly violated in recent months.

Without an evidentiary hearing and subpoena power, what more could Daniel do to

prove that his legal mail was opened intentionally and its contents read by prison

staff?

The Court shouldn't sweep these infringements on Daniel's constitutional

rights under the table and should order an evidentiary hearing to shed light on why

CDCR staff has repeatedly opened his legal mail.  At a minimum, the Court should

order the government to produce declarations under oath on why its custodians

have repeatedly violated the Court's prior order against opening legal mail outside

the presence of the defendant.

### C.    Restrictions on Access with Counsel

The Court's prior order stated that defendants in this case must be permitted

in-person visits with attorneys that are conducted in a way that the content of the

conversations cannot be heard outside the visitation booth.  Docket 510, at 15.

This presupposes that a defendant is allowed to have regular attorney-client visits

at all.  Since August, however, the prison has reduced legal visits from three to two

days a week between 8 a.m. and 1:30 p.m., with only one day (Thursday) in private

interview booths.[2]  Docket 866.  This has made in-person access increasingly

unworkable as attorneys, investigators, and others compete over scarce legal

visiting rooms.  Just this week, Daniel's mitigation specialist was refused her

---

[2]    By contrast, the Sacramento jail inmates can meet with counsel seven days a
week from 7 a.m. to 10 p.m.  Federal prisons generally have much more
availability for attorney-client visits.  For instance, USP Atwater's website
provides for legal visits during "normal business hours."

request to meet with her client this Thursday and next week because of fully booked or unavailable legal visitation.  *See* Declaration of Ronda Swenson (attached).

Although a prison transfer to a suitable detention facility appears to be the only available remedy for the myriad of constitutional violations here, in the short-run the Court should also protect Daniel's right to access and communicate confidentially with counsel by ordering the U.S. Marshal to transport Daniel to its holding cells in the federal courthouse for up to twice weekly conferences with defense team members.

### IV.  Conclusion

For these reasons, on reconsideration, the Court should order that Daniel be transferred out of CDCR custody to an appropriate pretrial detention facility or federal prison to protect his right to access to counsel and the exercise of his other constitutional rights.  Even if the Court does not order Daniel transferred out of CDCR custody, the Court should exercise its power to safeguard a defendant's access to courts and other constitutional rights by taking other appropriate steps, such as ordering that Daniel be transferred for twice weekly legal visits at the U.S. Marshal's holding cells to meet confidentially with his defense team and issuing an order to show cause to the government and CDCR on why his legal mail had been opened improperly four times in three months.

Respectfully submitted,

Dated:  November 3, 2021

/s/ Timothy Warriner
TIMOTHY WARRINER

/s/ John Balazs
JOHN BALAZS

Attorneys for Defendant
BRANT DANIEL