JOHN BALAZS, Bar # 157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA 95814
Telephone: (916) 447-9299
john@balazslaw.com

TIMOTHY E. WARRINER, Bar # 166128
Attorney at Law
455 Capitol Mall, Suite 802
Sacramento, CA 95814
Telephone: (916) 443-7141
tew@warrinerlaw.com

Attorneys for Defendant,
BRANT DANIEL

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Case No. 2:19-CR-0107-KJM |
|---|---|
| Plaintiff, | ) NOTICE OF MOTION AND DEFENDANT BRANT DANIEL'S *SECOND* MOTION FOR DISCOVERY; MEMORANDUM IN SUPPORT OF MOTION FOR DISCOVERY |
| vs. | |
| BRANT DANIEL, | |
| Defendant. | ) Date: TBD<br>) Time: TBD<br>) Courtroom: 3<br>) Honorable Kimberly J. Mueller |

TO: PHILLIP TALBERT, U.S. Attorney, and JASON HITT, ROSS PEARSON, and DAVID SPENCER, Assistant U.S. Attorneys:

NOTICE IS HEREBY GIVEN that at a date and time to be determined, before the Honorable Kimberly J. Mueller, Chief District Judge, the defendant, Brant Daniel, through counsel, does and will move for an order for discovery under the Fifth, Sixth, and Eighth Amendments to the U.S. Constitution, Federal Rule of

1

Criminal Procedure 16, *Brady v. Maryland,* 373 U.S. 83 (1963), and its progeny as set forth in the attached Memorandum of Points and Authorities.

    This discovery motion is noticed before the district court because it is related and intertwined with Daniel's first "pre-authorization" discovery motion, which the district court granted, in part.   ECF No. 824.

    This motion is based on the instant motion, exhibits, attached Memorandum of Points and Authorities, and any evidence or argument before or at the hearing on this motion.

                                        Respectfully submitted,

DATED: July 22, 2022

                                  /s/ Timothy E. Warriner
                                TIMOTHY E. WARRINER

                                /s/ John Balazs
                                JOHN BALAZS

                                Attorneys for Defendant
                                BRANT DANIEL

MEMORANDUM OF POINTS AND AUTHORITIES

I. Procedural Background.

In count one of the Indictment, the government charged Brant Daniel and other defendants with conspiring to participate in an Aryan Brotherhood racketeering enterprise from October 2011 to June 2019 in violation of 18 U.S.C. § 1962(d). As part of the conspiracy, the government also charged Daniel with the first-degree murder of Zachary Scott in Salinas Valley State Prison on October 29, 2016. ECF No. 25, ¶42. In 2017, Daniel pled guilty to second-degree murder in connection with the Scott killing in Monterey County Superior Court. He was sentenced to 30 years imprisonment.

Daniel has been detained throughout pretrial proceedings in this capital case in California State Prison-Sacramento. In October 2020, CDCR filed a Rules Violation Report (RVR) alleging that a correctional officer found a manufactured weapon in Daniel's cell after officers purportedly received information from a confidential informant that Daniel possessed a weapon that he intended to use to assault or kill a correctional officer. Exhibit A, pp. 2-3. Shortly afterward, CDCR transferred Daniel from the prison's Short-Term Restricted Housing (STRH) Unit to the Psychiatric Services Unit (PSU), even though Daniel did not meet the criteria for placement in the PSU.[1] It was the first time in 26 years in CDCR custody that Daniel had ever been accused of any offense involving violence against an officer.

In January 2021, Daniel filed a motion to transfer him from the PSU to another detention facility to protect him from retaliation from prison authorities.

---

[1] The PSU is a segregated housing unit for inmates diagnosed with severe psychiatric disorders. 15 Cal. Code of Reg. § 3341.2.

ECF No. 703.² At the same time, the defense filed a first motion for discovery of officer misconduct at CSP-Sacramento state prison under *Brady v. Maryland,* 373 U.S. 83 (1963), Federal Rule of Criminal Procedure 16, and other authorities. ECF No. 702. Daniel argued that known evidence that a group of rogue CSP-Sacramento officers have threatened or assaulted inmates, have fabricated evidence and planted weapons and drugs on inmates, and have falsified reports is material to show why the Department of Justice should not use the unreliable RVR allegations in its decision whether to seek the death penalty against Daniel in this case. The government opposed the motion (ECF No. 708), but it acknowledged at the hearing that the RVR discipline allegations are not "off the table" with respect to the DOJ's decision whether to seek the death penalty against Daniel. Exhibit B, Reporter's Transcript, 5/3/21, p. 16. CDCR has still not held any hearing on the disciplinary violation charge and the Sacramento County District Attorney has not charged Daniel with any offense based on the incident.

      In its July 2021 order, the Court granted several of Daniel's discovery requests, finding that the requested items are "material" to rebutting the RVR allegations and "within the government's possession, custody, or control" under Rule 16(a)(1)(E)(i). ECF No. 824. The Court also concluded that in general "*Brady* does not require the government to disclose evidence in time for a pre-authorization presentation by the defense." *Id.* at 7. Nonetheless, the Court noted that it "may sometimes be prudent to order 'accelerated discovery' of information required by *Brady* so that the defense can review that information before a pre-authorization presentation." *Id.*, citing *United States v. Ortiz,* No. 12-0119, 2012 WL 5379512, at *4 (N.D. Cal. Oct. 31, 2012). The Court also stated that, upon

---

²     Before that motion was decided, CDCR transferred Daniel out of the PSU and back to the STRH unit.

request, it may be appropriate for the Court to order such discovery under its "inherent discovery to manage discovery in criminal cases" under *United States v. W.R. Grace,* 526 F.3d 499, 508-09 (9th Cir. 2008).  After Daniel moved to compel discovery pursuant to the Court's order, ECF No. 960, the CDCR provided defense counsel some limited discovery responsive to the Court's order.

In November 2021, the government informed counsel that it may seek authorization from the Attorney General to seek the death penalty against Daniel and invited counsel to make a written submission bearing on its decision.  On February 25, 2022, defense counsel provided local prosecutors an initial submission on why the government should not seek the death penalty against Daniel.  *See* DOJ Manual 9-10.140(D)(1), (8).  Since then, the defense has not received any information on the status of the DOJ's death-authorization decision.

In this motion, Daniel seeks further discovery bearing on the government's pending death-authorization decision.  A jury trial is set for March 20, 2023.

**II.    The Court should order the government to produce deceased CDCR whistleblower Kevin Steele's memoranda and other discovery concerning CDCR's October 2020 Rules Violation Report against Daniel under *Brady*, the Fifth, Sixth, and Eighth Amendments, and Federal Rule of Criminal Procedure 16(a)(1)(E)(i).**

**A.    Federal Rule of Criminal Procedure 16(a)(1)(E)(i)[3]**

"Rule 16 permits discovery that is relevant to the development of a possible defense." *United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir. 1990), citing

---

[3]   Federal Rule of Criminal Procedure 16(a)(1)(E)(i) provides:

(E) *Documents and Objects.*  Upon a defendant's request, the government must permit the defendant to inspect and copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; . . . .

*United States v. Clegg,* 740 F.2d 16, 18 (9th Cir. 1984). "A defendant who requests discovery under Rule 16(a)(1)(E)(i) 'must make a prima facie showing of materiality.'" Order, ECF No. 824, at 12, quoting *Mandel,* 914 F.2d at 1219. Although the defendant must make a showing of materiality, "[m]ateriality is a 'low threshold; it is satisfied so long as the information . . . would have helped' to prepare a defense." *United States v. Soto-Zuniga,* 837 F.3d 992, 1003 (9th Cir. 2016) (*quoting United States v. Hernandez-Meza,* 720 F.3d 760, 768 (9th Cir. 2013)).

"Evidence is material within the meaning of Rule 16 'if it could be used to counter the government's case or to bolster a defense . . . .'" *United States v. Wilson,* No. 1:19-CR-0155, 2021 U.S. Dist. Lexis 25671(W.D. N.Y. Feb. 10, 2021), at *14 (*quoting United States v. Stevens,* 985 F.2d 1175, 1180 (2d Cir. 1993)). "Information that is not exculpatory or impeaching may still be relevant to developing a possible defense." *United States v. Muniz-Jaquez,* 718 F.3d 1180, 1183 (9th Cir. 2013). Even inculpatory evidence may be "material" because "[a] defendant who knows the government has evidence that renders his planned defense useless can alter his trial strategy. Or he can seek a plea agreement instead of going to trial." *Id.*

**B.     *Brady* Law**

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused . . . violates due process where the evidence is material either to guilt *or punishment*, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963) (emphasis added). The *Brady* rule encompasses impeachment material, as well as exculpatory evidence. *United States v. Bagley,* 473 U.S. 667, 676-77 (1995); *United States v. Henthorn,* 931 F.3d 29 (9th Cir. 1990).

The prosecution's duty to disclose includes any favorable evidence that could be used in "obtaining further evidence." *Giles v. Maryland,* 386 U.S. 66, 74 (1968). Favorable evidence need not be competent evidence or evidence admissible at trial so long as it is material to the preparation of the defense. *Sellers v. Estelle,* 651 F.2d 1074, 1077 n.6 (5th Cir. 1981); *see* DOJ Justice Manual, § 9-5.001(C)(3) (explaining that the government must disclose exculpatory and impeachment "information regardless whether the information subject to disclosure would itself constitute admissible evidence").

Under the *Brady* rule, the prosecution "has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Kyles v. Whitley,* 514 U.S. 419 (1995). "Because prosecutors are in a 'unique position to obtain information known to other agents of the government,' they have an obligation to 'disclose what they do not know but could have learned.'" *United States v. Bruce,* 984 F.3d 884, 896 (9th Cir. 2021) (*quoting United States v. Cano,* 934 F.3d 1002, 1023 (9th Cir. 2019)). "Prosecutors cannot turn a blind eye to their discovery obligations." *Id.*

This is particularly important in capital cases. As this Court has noted, "the Supreme Court has 'consistently required capital proceedings to be policed at all stages by an especially vigilant concern for procedural fairness and for the accuracy of factfinding.'" ECF No. 274 (*quoting Strickland v. Washington,* 466 U.S. 668, 704 (1984)); *see also Woodson v. North Carolina,* 462 U.S. 280, 305 (1976) ("because there is a qualitative difference between death an any other permissible form of punishment, 'there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case'").

**C.     Discovery Request**

The defense requests the following discovery bearing on the government's decision whether to seek the death penalty against Daniel:

1. Any and all memoranda, reports, emails, correspondence, or other documents by now deceased, former CDCR whistleblower Kevin Steele to the CDCR Director, CDCR Secretary, the CSP-Sacramento Warden, the Sacramento County District Attorney's Office, the FBI, the U.S. Attorney's Office, or other investigating official or agency regarding:

    (a) the incidents alleged in the Oct. 2020 RVR (Exh. A. pp. 2-3);

    (b) CSP-Sacramento corrections officers planting weapons on inmates or in their cells in the Short-Term Restricted Housing (STRH) Unit during the period Daniel has been detained there after the indictment in this case (June 2019 to the present), including but not limited to the weapon allegedly found in Daniel's cell;

    (c) CSP-Sacramento officers in the STRH unit falsifying documents and evidence or committing other serious acts of misconduct during the post-indictment period Daniel has been detained there; and

    (d) CSP-Sacramento officers twice seizing weapons from another inmate in Daniel's unit shortly before the Oct. 2020 RVR incident but failing either to write a report or submit a disciplinary charge against the inmate. This is relevant to show how CDCR officers had weapons available to potentially plant in other inmates' cells, including Daniel's cell.

2. Any and all written reports, statements, or documents by officer Ramirez or officer Lee regarding the search of Daniel's cell and/or the incidents alleged in the Oct. 2020 RVR.

3. Any and all information, reports, statements, correspondence, or other documents in the government's possession (including CDCR) that tends to cast doubt on the allegations against Daniel in the Oct. 2020 RVR.

**D.     The Requested Information and Materials are Discoverable.**

First, the requested discovery should be disclosed because it is "material to preparation of the defense" under Federal Rule of Criminal Procedure

16(a)(1)(E)(i).  In its prior discovery order, the Court held that the information Daniel requested would be material if it could be used to rebut the RVR allegations as it bears on the death-authorization decision.  ECF No. 824, at 13 ("Information is thus 'material' under Rule 16(a)(1)(E)(i) if Daniel can make a prima facie showing that it will help him show he poses no danger to others and respond to arguments that he has a history of infractions or offenses.").  The Court also stated that information about whether officers permitted other inmates in the prison to possess weapons or attempted to cover up another inmate's weapon possession would be material to Daniel's defense if the request is appropriately limited in time and location.  *Id.* at 14.  The requested discovery satisfies this standard as the discovery request seeks information concerning only the prison's Short-Term Restricted Housing Unit while Daniel has been housed there after the indictment in this case.

   The requested discovery is also exculpatory with respect to sentencing under *Brady* and its progeny.  Although the Court had ruled that "*Brady* does not require the government to disclose evidence in time for a pre-authorization presentation by the defense, the Court also emphasized that it has "inherent authority to manage discovery in criminal cases and to ensure the parties conduct appropriate discovery."  *Id.* at 7, *citing United States v. W.R. Grace,* 526 F.3d 499, 508-09 (9th Cir. 2008).  As a result, the Court noted that "it may sometimes be prudent to order 'accelerated discovery' of information required by *Brady* so that the defense can review that information before a pre-authorization presentation." *Id.* at 7.  This is the case here.  The defense has received no notice that the DOJ has reached a decision on whether to seek the death penalty.  In addition to Rule 16, the Court thus should order the requested discovery required by *Brady* under its inherent powers to control discovery.

Nor can the government argue this is a fishing expedition. This discovery request seeks known memoranda authored by Kevin Steele, a former CDCR investigating services unit officer. After Sgt. Steele's death, the Sacramento Bee reported:

> Earlier this year, Steele wrote memos to the prison's warden and the state corrections secretary in which he relayed allegations that officers in his unit had planted weapons and drugs, and falsified documents. The Sacramento Bee obtained the memos after his death.
>
> ***
>
> The allegations in Steele's memos, and his previously confidential statements to attorneys, paint a broader picture of misconduct inside the prison known as New Folsom than has been reported.
>
> ***
>
> The state, meanwhile, is investigating members of Steel and Rodriguez's former unit. Ten officers from the unit are facing discipline in an inquiry related to Rodriguez's death, CDCR spokewoman Dana Simas said in an email, and the entire unit has been replaced.
>
> ***
>
> [Steele] said Rodriguez told him some ISU officers were planting drugs and weapons on inmates. Officers planted the items late in the afternoons "in an effort to have to work overtime hours to finish the reports," Steele said in his memos, citing Rodriguez.
>
> Rodriguez died Oct. 21, 2020. Steele met with Lynch the next day, according to his February memo to Allison, the corrections secretary.

Exhibit C, Sacramento Bee, Oct. 6, 2021, "Exclusive: California correctional officer alleged cover-ups in prison killings before his death."

Moreover, after reviewing the report and other evidence regarding the October 2020 disciplinary charge against Daniel, Steele advised a Sacramento County Deputy District Attorney that he believed the allegation against Daniel was not credible. *See* Declaration of Counsel in Support of Defendant Brant Daniel's *First* Motion for Discovery *Under Seal,* ¶7.

Further, officer Ramirez's report of searching Daniel's cell himself and personally finding a weapon is inconsistent with later statements. Officer Ramirez initially reported that after receiving information from a confidential informant": "I immediately had DANIEL removed from his assigned cell" and "I conducted a search for the inmate manufactured weapon." Exh. A, Rules Violation Report, 10/15/2020, p. 2. Officer Ramirez added, "I utilized a hand held metal-detector" and "I opened the mattress and located" the weapon. *Id.* But when Daniel disputed the disciplinary charge as false and explained that officer Lee rather than officer Ramirez searched his cell, officers Ramirez and Lee then claimed that they searched Daniel's cell together. Exh. A, p. 4. Based on the Sacramento Bee's article and other information, the defense believes that officers Ramirez and Lee have been demoted after this incident.

Given that this is a potential capital case against Daniel, the defense is entitled to present through the Department of Justice's death penalty review process or at a potential penalty phase "any factors in the defendant's background, record or character or any other circumstance of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8)); *McClesky v. Kemp,* 481 U.S. 279, 306 (1987) (explaining that the jury must be allowed to consider "any relevant circumstance that could cause it to decline to impose the [death] penalty"). This includes information that may rebut a disciplinary charge supporting a potential aggravating factor, such as a defendant's future dangerousness or prison disciplinary history. Under the Department of Justice's Manual, "[e]xculpatory information, regardless of whether information is memorialized, must be disclosed to the defendant reasonably promptly after discovery." U.S. DOJ Manual, 9-5.002, Step 3, B. Counsel seek the information requested in this motion to supplement its initial mitigation submission with

respect to a pending death-authorization decision. The Court thus should order the government to provide the requested discovery under Rule 16, *Brady,* and the other authorities cited in this motion.

### III.  Conclusion

For these reasons, the Court should grant defendant Brant Daniel's motion for discovery as set forth above.

Respectfully submitted,

DATED:  July 22, 2022

/s/ Timothy E. Warriner
TIMOTHY E. WARRINER

/s/ John Balazs
JOHN BALAZS

Attorneys for Defendant
BRANT DANIEL