JOHN BALAZS, Bar # 157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA 95814
Telephone: (916) 447-9299
John@Balazslaw.com

TIMOTHY E. WARRINER, Bar # 166128
Attorney at Law
455 Capitol Mall, Suite 802
Sacramento, CA 95814
Telephone: (916) 443-7141
tew@warrinerlaw.com

Attorney for Defendant,
BRANT DANIEL

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTSRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:19-CR-0107-KJM |
| Plaintiff, | REPLY TO OPPOSITION FOR ORDER PROVIDING MEDICAL CARE |
| vs. | **DEATH PENALTY CASE** |
| BRANT DANIEL, | Date: August 31, 2022 |
| Defendant. | Time: 9:00 p.m. |

1.      **There is a real possibility of interference with the right to counsel.**

        This case is set for trial in March of 2023. Counsel will be ramping up activity in the case

and will need to review many documents with Mr. Daniel. Mr. Daniel desires to independently

review documents in order to best assist counsel. His review will require hours of reading and

concentration. The location of the lipoma interferes with his ability to read and focus. As it has

grown, it pulls on the skin and muscles above the eye, causing a constant eye irritant. (See

Exhibit A (photos of head).) Dr. Ma described it as "causing traction sensation/pain in the forehead and right eye." (Exhibit A to 5/17/22 motion, p. 1) Dr. Ma expressed no concern that Mr. Daniel was faking his symptoms. He is a correctional health care provider and is well aware that some inmates fabricate medical needs – obviously that is not the case here.

Although inmates serving sentences must file civil actions to address conditions of confinement, the court has jurisdiction to consider conditions of confinement, including medical issues, when there is interference with a pretrial detainee's access to counsel in a criminal case. See *United States v. Luong*, 2009 U.S. Dist. LEXIS 85695, 2009 WL 2852111, at 1; *Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995) ("Section 3142(i)(3) is designed to protect a defendant's Sixth Amendment right to counsel, and if that right is being infringed, Judge Moreno has the statutory authority to protect Falcon's access to counsel."); *United States v. Martinez-Hernandez*, No. 3:15-CR-00075 JAF, 2015 U.S. Dist. LEXIS 141395, 2015 WL 6133050, at *8 (D.P.R. Oct. 15, 2015) (Fuste, J.) ("A pretrial detainee may challenge conditions of his confinement that affect his right to counsel before the judge presiding over the underlying criminal case.").

Mr. Daniel falls under the exception for pretrial detainees. He was serving a state prison sentence when he was indicted. He was then taken into federal custody on a writ of habeas corpus ad prosequendum. DOC 55 (6/19/19). He is now a federal pretrial inmate and is in the custody of the U.S. Marshal, under contract with the California Department of Corrections and Rehabilitation.

In evaluating whether the failure of a pretrial detention facility to provide medical care violates a defendant's Sixth Amendment right, the defendant bears the burden of showing "the real possibility of interference [with his right to access counsel], not just inconvenience." *United*

*States v. Folse*, 2016 U.S. Dist. LEXIS 96785 at \*66 (D.N.M. June 15, 2016). The purpose of allowing a pretrial detainee to address conditions of confinement affecting interference with the right to counsel is because it would unduly burden a defendant's exercise of his constitutional trial rights to require a separate civil lawsuit. "A defendant attempting to prepare for trial should be able to secure his or her access to counsel without filing a civil suit. This is particularly important where the defendant has court-appointed counsel, because it would be extraordinarily difficult for him or her to file a pro se civil suit solely to prepare for trial." *Folse*, 2016 U.S. Dist. LEXIS 96785 at \*48. The concern articulated in *Folse* is especially pertinent here as Mr. Daniel is facing a potential death penalty. In death penalty matters there is a heightened need for reliability in the determination of guilt and punishment. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976); *Zant v. Stephens*, 462 U.S. 862, 884-85 (1983).

The court should not lightly dismiss the interference with Mr. Daniel's vision inflicted by the growing lipoma. The government's comparison of Mr. Daniel's condition to a co-defendant's request for special shoes is a false equivalency. Govt's Opposition, p. 4. The lipoma has grown to such an extent that it interferes with Mr. Daniel's vision and his ability to review discovery in a document intensive case. Mr. Daniel's declaration describes that his vision is distorted when he reads and is blurry, that he must push up his eyebrow when he reads to avoid blurry vision, and that the lipoma is "interfering with my sense of seeing clearly." Exhibit B (Daniel's declaration). "One of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense." *Wolfish v. Levi*, 573 F.2d 118, 133 (2nd Cir. 1978).

2.   **Mr. Daniel's request for surgery to remove the lipoma is due to the need to relieve the pressure on his head and eye and not for cosmetic reasons.**

a.   *Chronology and history of medical treatment:*

To appreciate the reasonableness, and appropriateness of Mr. Daniel's request, the court should consider the chronology and history of the medical treatment. See Exhibit C, Health Care Services Institutional Level Response, p. 2.

Mr. Daniel was seen for a surgical consult on **June 18, 2021**. It was noted that a scalp mass "has grown slowly over the last six years and become increasingly bothersome with recommendation for surgical excision." Exhibit C, p. 2.

A request for specialty services of mass excision was approved on **June 24, 2021**, and was "tentatively scheduled." Exhibit C, p. 2.

On **August 10, 2021**, the Unit PCP noted that Mr. Daniel is "under a federal case, and therefore surgical intervention requires approval from the Department of Justice." Exhibit C, p. 2.

The surgeon reported that the mass was benign, "and the proposed surgery is elective, not urgent." Exhibit C, p. 2.

A second request was made for the surgery on **November 2, 2021.** Dr. Ma writes: "lipoma in scalp for more than a yr. Progressively bigger, and causing traction sensation/pain in the forehead and Rt eye. Seen by general surgeon and recm'd surgical removal. Pt. now is more symptomatic because of the lipoma." Exhibit A to 5/17/22 motion.

On **November 24, 2021**, Dr. Ma received a message that the surgery was denied. Exhibit A to 5/17/22 motion. The denial from USMS Laura Davis states that "the request for an elective, non urgent 'Scalp mass excision' is Denied. ¶ This is a 47yo male with a lipoma of the scalp for >6 years, MD note dated 9/15/21 in response to URC urgency letter request: "The scalp mass is lipoma which is benign. The proposed surgery is elective, not urgent." LVN/MD email dated 11/23/21 in response to 2nd urgency letter request: "Per Dr. Matolo 1. Is this urgent surgery? No

2. Can it wait? Yes" ¶ Removal of lipomas for cosmetic reasons is not authorized by USMS. Please resubmit this request with supportive documentation if the condition is considered of sufficient concern to warrant reconsideration during the prisoner's limited remaining time in USMS custody." Exhibit A to 5/17/22 motion.

At Mr. Daniel's **December 3, 2021** health care grievance interview, Mr. Daniel "complained of right eye irritation and distorted vision from a sensation of tightening/pulling skin, increased scalp pain, and grooving that radiates down the forehead." Exhibit C, p. 2.

On **December 8, 2021**, there was a General Surgery follow up appointment. The PCP noted that surgical requests were denied twice by the "Federal Marshall case manager." Exhibit C, p. 2. "The PCP offered to refer you to the optometrist for further evaluation about your vision, but you declined because you stated that your vision acuity is good, and that you felt the irritation around your right eye would not be addressed by the optometrist." Exhibit C, p. 2.

b.      *The treatment is reasonable and needed to address the right to assist counsel.*

The surgery requested is not "cosmetic." Mr. Daniel was scheduled for the surgery when it was cancelled by action of the USMS. Prisons do not undertake "cosmetic" surgery for inmates. The surgery was because the lipoma had grown and had become "increasingly bothersome." Inmate surgery need not rise to the level of "emergency" to warrant treatment. The notion of the surgery being "cosmetic" was put forth exclusively by USMS Laura Davis.

The government writes that "any short circuiting of the decision to determine the medical propriety or necessity of an elective medical procedure is best left to medical professionals—not pre-trial motion practice by defense lawyers and prosecutors in criminal cases. Govt's Opposition, p. 3. This argument fails to appreciate that it was the USMS—not a medical professional—that put a halt to the scheduled surgery. The medical professionals felt that the

procedure was reasonable and needed to address a growing lipoma "causing traction sensation/pain in the forehead and Rt eye." Exhibit A to 5/17/22 motion.  It was the USMS that mischaracterized the surgery as "cosmetic" and refused to approve it.

The government's argument that "the CDCR must determine how best to accommodate inmates' medical needs without compromising vital security interests" fails to account for the chronology of Mr. Daniel's treatment. Govt's Opposition, p. 3. The CDCR determined that the surgery was appropriate and scheduled it. Security interests were not deemed to weigh against the surgery. This is consistent with Mr. Daniel's history of medical treatment. He has been out for medical consultations concerning his back, heart and other issues between 20-30 times without any security issues arising. Again, it was the USMS that stopped the surgery. The USMS did so without consulting with a medical expert and without considering security interests. Instead, the USMS appears motivated by cost cutting, referring to Mr. Daniel's "limited remaining time in USMS custody." Exhibit A to 5/17/22 motion. Importantly, there is no indication that Mr. Daniel's rights as a pre-trial inmate were taken into consideration.

c.     *The government's attempt to get Dr. Ma to back track on his observation that the lipoma was getting "progressively bigger, and causing traction sensation/pain in the forehead and Rt eye" should be rejected.*

Dr. Ma is an experienced custodial physician and is aware that some inmates may exaggerate or fabricate medical symptoms in order to obtain treatment. Despite being alert to such issues, he indicated no concern that Mr. Daniel was malingering. Doctors routinely evaluate and diagnose medical conditions and recommend treatment, based upon subjective complaints because often that is all there is. Here, the subjective complaint is consistent with the size, growth, and location of the lipoma. Dr. Ma's statement that he did not render an opinion, in response to the government's email, does not render his findings meaningless.

**Conclusion**

For these reasons, Mr. Daniel requests that the court order that he be provided surgery to remove the lipoma as soon as possible. If the court deems it helpful, it is requested that an evidentiary hearing be scheduled to allow Dr. Ma to testify.

DATED: August 12, 2022                    /s/ Timothy E. Warriner
                                          /s/ John Balazs
                                          **Attorneys for Defendant, Brant Daniel**